UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

DR. GERALD R. FINKEL, as Chairman of
the Joint Industry Board of the Electrical
Industry,

                            Plaintiff,

                -against-

GAFFNEY-KROESE ELECTRICAL
SUPPLY CORP.; GAFFNEY-KROESE
EXPORT CORP.; CK & JK LLC; GK
SUPPLY, LLC; GKTT LLC; and J AND C,
LLC,

                            Defendants.

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-1777 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

        Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical

Industry ("Plaintiff"), initiated this action on March 30, 2022, against Defendants

Gaffney-Kroese Electrical Supply Corp. ("Gaffney-Kroese"); Gaffney-Kroese Export

Corp. ("GK Export"); CK & JK LLC ("CK & JK"); GK Supply, LLC ("GK Supply");

GKTT LLC ("GKTT"); and J and C, LLC ("J&C"). (Complaint ("Compl."), ECF No. 1.)

Plaintiff seeks withdrawal liability and related relief arising from Defendant Gaffney-

Kroese's cessation of pension benefit contributions to the Employees Security Fund of

the Electrical Products Industries, a plan governed by the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1001–461, as amended by the Multiemployer

Pension Plan Amendments Act of 1980, Pub. L. No. 96-364, 94 Stat. 1208. Specifically,

Plaintiff seeks a default judgment against Gaffney-Kroese and entities Plaintiff alleges

are affiliated with Gaffney-Kroese, including GK Export, CK & JK, GK Supply, GKTT,

and J&C (the "Affiliated Entities"), as businesses under "common control" with Gaffney-Kroese within the meaning of 29 U.S.C. § 1301(b)(1), making them jointly and severally liable for Gaffney-Kroese's withdrawal liability. (Compl., ECF No. 1, ¶¶ 18, 27, 31.) In addition, Plaintiff requests an award of interest, attorney's fees and costs. (*Id.* ¶ 34.)

Currently pending before this Court is Plaintiff's motion for default judgment, which the Honorable Diane Gujarati referred to the undersigned Magistrate Judge for a report and recommendation. (*See* Notice of Mot. for Default J., ECF No. 15; Aug. 22, 2022 ECF Order.) For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

## I.  Factual Background

Plaintiff is the Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Industry Board"). (Compl., ECF No. 1, ¶ 4.) The Joint Industry Board administers the Employees Security Fund of the Electrical Products Industries (the "Pension Fund") pursuant to the collective bargaining agreement ("CBA") between Local Union No. 3 of the International Brotherhood of Electric Workers, AFL-CIO (the "Union") and employer associations and employers in the electrical, elevator, sign, television, burglar alarm, and other related industries. (*Id.* ¶¶ 4, 12–13.) The Pension Fund is a benefit pension plan subject to Title IV of ERISA, and has a joint labor-management Board of Trustees in accordance with the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(c)(5). (Compl., ECF No. 1, ¶ 14.) Under ERISA, the Pension Fund is a "multiemployer plan" and "employee benefit pension plan." (*Id.* ¶ 15.) *See* 29 U.S.C. § 1002(37), (2)(A). The Joint Industry Board is the administrator of the Pension Fund, and the Joint Industry Board and its members are fiduciaries to the

Pension Fund within the meaning of ERISA. (Compl., ECF No. 1, ¶ 16; *see also* Decl. of Charles R. Virginia, Esq. in Supp. of Pl.'s Mot. for Default J. ("Virginia Decl."), ECF No. 16, ¶ 11.) *See* 29 U.S.C. § 1002(16)(A), (21)(A).

Plaintiff alleges that at all relevant times, Defendant Gaffney-Kroese was bound by the CBA with the Union, obligating them to "contribute specified amounts to the Pension Fund on behalf of each employee who performed specific categories of work." (Compl., ECF No. 1, ¶¶ 12–13.) Further, Plaintiff alleges that in 2021, Gaffney-Kroese permanently ceased all business operations in the Union's geographic jurisdiction, and permanently ceased its obligations to contribute to the Pension Fund. (*Id.* ¶ 17.) Accordingly, Plaintiff alleges that these actions effected a "complete withdrawal" from the Pension Fund under ERISA, 29 U.S.C. § 1383(a), causing Gaffney-Kroese to incur withdrawal liability. (Compl., ECF No. 1, ¶¶ 17, 18.) *See* 29 U.S.C. § 1381, 1391.

Although withdrawal liability is generally to be paid in installments under ERISA, payment of withdrawal liability may be accelerated upon an employer's default, as defined by the plan's rules. (Compl., ECF No. 1, ¶ 19.) *See* 29 U.S.C. § 1399(c)(5); *see also* 29 U.S.C. § 1399(c)(2)–(3). Here, the Pension Fund's Trust Agreement provides, in pertinent part, as follows:

> [A] default may be declared if . . . it reasonably appears to the [Joint Pension] Committee, or the Joint Industry Board, that the Employer has experienced a change in circumstances of a substantial nature from which it can be reasonably anticipated that future installments cannot be paid.

(Pension Fund Trust Agreement ("Trust Agreement"), ECF No. 16-5, Art. IX § 1(I); *see also* Compl., ECF No. 1, ¶ 19.) Plaintiff sent Gaffney-Kroese a "Notice and Demand" on November 16, 2021, claiming that its cessation of business operations constituted a "substantial change in circumstances" that met the above threshold, and that Gaffney-Kroese was, accordingly, in "default" on its ERISA obligations. *See* 29 U.S.C.

3

§ 1399(c)(5)(B). (Compl., ECF No. 1, ¶¶ 20, 21, 24; Notice and Demand Letter, ECF No. 16-6.)

Plaintiff also alleges that Christopher C. Kroese and John S. Kroese III together own at least 80% of issued and outstanding stock of the Affiliated Entities, including GK Export, CK & JK, GK Supply, GKTT, and J&C, as well as Defendant Gaffney-Kroese (referred to collectively as "Defendants"). (Compl., ECF No. 1, ¶¶ 27–30.) Accordingly, Plaintiff maintains that Defendants are all under common control and that they are jointly and severally liable for Gaffney-Kroese's withdrawal liability. *See* 29 U.S.C. §§ 1301(b)(1), 1399(c)(5)(B). (Compl., ECF No. 1, ¶¶ 31, 33.)

On the basis of their complete withdrawal from the plan, Plaintiff claims that Defendant Gaffney-Kroese is liable in the amount of $538,982, plus 1.5% monthly prejudgment interest, liquidated damages in an amount equal to the greater of the foregoing amount of interest or 20% of the foregoing amount of withdrawal liability, and attorney's fees and costs. (*Id.* ¶ 25, Prayer for Relief.) *See* 29 U.S.C. §§ 1132(a)(3), (g)(2), 1145, 1399(c)(6), 1451(b), (e); 29 C.F.R. § 4219.33. (*See also* Trust Agreement, ECF No. 16-5, Art. IX § 1(I).) Plaintiff also asserts that all Defendants are jointly and severally liable for the same amount. (Compl., ECF No. 1, ¶ 34, Prayer for Relief.) No Defendants have made any payment toward the withdrawal liability assessment. (*Id.* ¶¶ 23, 32.)

## II. Procedural History

As noted, Plaintiff commenced this action on March 30, 2022. (Compl., ECF No. 1.) On May 20, 2022, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, due to Defendants' failure to appear or otherwise defend this action. (Clerk's Entry of Default, ECF No. 12.) Plaintiff then moved for default judgment against Defendants on August 19, 2022. (*See* Notice of Mot. for Default J., ECF No. 15.) On August 22, 2022, Judge Gujarati referred Plaintiff's

4

motion to the undersigned Magistrate Judge for a report and recommendation. (Aug. 22, 2022 ECF Order.) On October 11, 2022, the Court scheduled a status conference on the default motion for November 3, 2022, and mailed formal written notice to Defendants at all available addresses. (*See* Oct. 11, 2022 ECF Scheduling Order; Notice to Defs., ECF No. 19.) Defendants did not appear at the November 3, 2022 conference. (Nov. 3, 2022 ECF Minute Entry and Order.)

## DISCUSSION

### I. Default Judgment

#### A. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b).[1] A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound

---

[1] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion papers comport with Local Civil Rule 7.1, and that Plaintiff has established procedural compliance with Local Civil Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Civil Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 11); (2) filed affidavits demonstrating that Defendants have failed to defend the action, and that the pleadings were properly served, in accordance with Local Civil Rule 55.1(b) (*see* Decl. in Supp. of Mot. for Default J., ECF No. 16; Affs. of Service, ECF No. 16-3); and (3) certified the mailing of the motion papers to Defendants, in accordance with Local Civil Rule 55.2(c). (*See* Certificate of Service, ECF No. 18 (certifying mailing of (1) the Notice of Plaintiff's Motion for Default Judgment (ECF No. 15), (2) the Virginia Declaration with Exhibits (ECF No. 16), (3) the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment (ECF No. 17), and (4) the August 22, 2022 Order issued by Judge Gujarati).)

discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Phrased another way, "[t]he court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). The "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "detailed affidavits and documentary evidence" (quotations marks omitted)).

6

**B. Analysis**

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

1. *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. Here, Plaintiff adequately served Defendants Gaffney-Kroese

and CK & JK by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (*See* Proof of Service, ECF Nos. 5–6.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Allstate Ins. v. New Century Pharmacy, Inc.*, No. 19-CV-5702 (ENV) (VMS), 2021 WL 7830141, at *2, 4 (E.D.N.Y. Aug. 13, 2021) (holding that professional services corporation was adequately served via the New York Secretary of State). Plaintiff also adequately served Defendants GK Supply, GK Export, J&C, and GKTT through personal service on John Kroese, who is listed as Vice President of all four organizations on the affidavits of service. (*See* Proof of Service, ECF Nos. 7–10.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1). Defendants failed to respond to the complaint within 21 days of service and to Plaintiff's motion for default judgment, even after receiving notice from both Plaintiff and the Court. (*See* Certificate of Service, ECF No. 18; Oct. 11, 2022 ECF Order; Notice to Defs., ECF No. 19.) In light of Defendants' failure to respond, despite receiving notice at least three times of this proceeding, the Court weighs this factor in favor of default.

   2.   *Meritorious Defense*

   "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense[.]" *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

### 3. *Prejudice*

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[s] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason to deny Plaintiff's motion, the Court recommends entering a default judgment.

## II. ERISA Claims

### A. Withdrawal Liability Under ERISA

Under ERISA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan[.]" 29 U.S.C. § 1381(a). A "complete withdrawal" occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383. "Where an employer either completely or partially withdraws from a plan 'the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment.'" *Div. 1181 Amalgamated Transit Union — N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 607 (E.D.N.Y. 2017) ("*Div. 1181*") (quoting *Gesualdi v.*

*Seacost Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015)); *see* 29 U.S.C. §§ 1382, 1399(b). The initial notification of withdrawal liability and demand for scheduled payments shall be sent "[a]s soon as practicable after an employer's complete or partial withdrawal." 29 U.S.C. § 1399(b)(1).[2]

To establish a successful withdrawal liability claim, "a 'plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule.'" *Ret. Plan of Nat'l Ret. Fund v. Lackmann Culinary Servs., Inc.*, No. 10-CV-6316 (VB), 2011 WL 3366354, at *3 (S.D.N.Y. July 29, 2011) (quoting *Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03-CV-4530 (PKC), 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004); 29 U.S.C. §§ 1382, 1399(b)(1)); *Div. 1181*, 270 F. Supp. 3d at 607.

## B. Default Under ERISA

An employer may be found to be in default of its ERISA obligations in the event that the employer fails "to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from

---

[2] ERISA further provides that an employer may respond within 90 days by (1) "ask[ing] the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments," (2) "identify[ing] any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," and (3) "furnish[ing] any additional relevant information to the plan sponsor." 29 U.S.C. § 1399(b)(2)(A). The plan sponsor must then "notify the employer of the plan's decision, identify the basis for the decision and explain the reason for 'any change in the determination of the employer's liability or schedule of liability payments.'" *Div. 1181*, 270 F. Supp. 3d at 607 (quoting 29 U.S.C. § 1399(b)(2)(B)). Notwithstanding a response from the employer, typically, "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) beginning no later than 60 days after the date of the demand[.]" 29 U.S.C. § 1399(c)(2). "ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability." *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5 (E.D.N.Y. 2001).

the plan sponsor of such failure," and "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5). Upon a finding of default, "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*; *see also Div. 1181,* 270 F. Supp. 3d at 608 (collecting cases).

### C. Common Control and Joint and Several Liability

ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer," 29 U.S.C. § 1301(b)(1), and "each is jointly and severally liable for the withdrawal liability of another." *Trs. of the Loc. 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.,* No. 13-CV-0198 (MKB) (JO), 2016 WL 1275041, at *3 (E.D.N.Y. Mar. 31, 2016) (quoting *UFCW Loc. One Pension Fund v. Enivel Props., LLC,* 791 F.3d 369, 371 (2d Cir. 2015)). "Common control" means "two or more trades or businesses . . . are members of a 'parent-subsidiary' or 'brother-sister' group of trades or businesses under common control." *I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.,* No. 92-CV-0597 (PKL), 2002 WL 999303, at *5 (S.D.N.Y. May 15, 2002) (citing 26 C.F.R. § 1.414(c)–2(a)), *aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.,* 94 F. App'x 850 (2d Cir. 2003). "In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity; and (2) a 'trade or business.'" *Enivel Properties, LLC,* 791 F.3d at 373 (citing 29 U.S.C. § 1301(b)(1)).

In evaluating common control,

Brother-sister corporations are defined as two or more corporations (i) where the same five or fewer persons own a controlling interest in each organization, and (ii) such persons are in effective control of each organization, taking into account the ownership of each person only to the extent such ownership is identical with respect to each such organization. [26 C.F.R.] § 1.414(c)–2(c). A "combined group of trades or businesses under common control" is defined as any group of three or more organizations, if (1) each such organization is a member of either a parent-subsidiary or brother-sister group of trades or businesses under common control and (2) at least one such organization is the common parent organization of a parent-subsidiary group of trades or businesses under common control and is also a member of a brother-sister group of trades or businesses under common control. *Id.* § 1.414(c)–2(d).

A "controlling interest" is defined as ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation, or at least 80 percent of the total value of shares of all classes of stock in such corporation. *Id.* § 1.414(c)–2(b)(2)(i)(A). "Effective control" is defined as ownership of "stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation." *Id.* § 1.414(c)–2(c)(2)(i). Therefore, a "brother-sister" group of businesses under common control must be controlled by the same five or fewer persons owning at least 80 percent of the shares of each corporation, with at least 50 percent of the shareholder's ownership interests in each corporation identical. *Ret. Plan of Nat'l Ret. Fund v. Lackmann Culinary Servs., Inc.*, No. 10-CV-6316 (VB), 2011 WL 3366354, at *4 (S.D.N.Y. July 29, 2011).

*Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 286 (E.D.N.Y. 2014).

## III. ERISA Liability

The Court must first consider whether Plaintiff has adequately alleged that Defendant Gaffney-Kroese was bound by the CBA. *See Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Sav. Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2018 WL 8452493, at *4 (E.D.N.Y. Dec. 28, 2018), *report and recommendation adopted sub nom. Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, 2019 WL 2301613 (E.D.N.Y. May 30, 2019).

Plaintiff alleges that Defendant Gaffney-Kroese was an employer as defined by ERISA and was bound by the CBA with the Union at all relevant times, and was therefore required to make certain contributions to multiemployer benefit plans. (*See* Compl., ECF No. 1, ¶¶ 12–13.) The facts alleged in the complaint suffice to establish that Defendant Gaffney-Kroese was bound by the CBA.

Plaintiff further claims that Defendant Gaffney-Kroese effectuated a "complete withdrawal" from the Pension Fund, incurring withdrawal liability under ERISA. *See* 29 U.S.C. §§ 1381, 1383(a), 1391. (Compl., ECF No. 1, ¶¶ 17–18.) Plaintiff also alleges that Defendant Gaffney-Kroese permanently ceased (1) business operations within the jurisdiction of the Union, (2) covered operations under the Pension Fund, and (3) to have an obligation to contribute to the Pension Fund, which resulted in a "complete withdrawal." (*Id.*) Plaintiff additionally claims that Defendants are under "common control" and are thus jointly and severally liable for damages. (*Id.* ¶¶ 27, 31.) For the reasons stated below, the Court finds that (1) Gaffney-Kroese's actions constituted a "complete withdrawal" and that Gaffney-Kroese is liable for withdrawal liability; (2) Gaffney-Kroese defaulted on its ERISA obligations; and (3) Defendants are under common control and are jointly and severally liable for the damages owed to Plaintiff.

### A. Withdrawal Liability & Gaffney-Kroese's Default

As set forth above, when a plan sponsor determines that an employer has completely or partially withdrawn, they must assess the amount of liability and demand payment. *See Lackmann Culinary Servs., Inc.*, 2011 WL 3366354, at *3 (quoting *Steve Petix Clothier, Inc.*, 2004 WL 67480, at *2; 29 U.S.C. §§ 1382, 1399(b)(1)). Although

ERISA permits withdrawal liability payments to be made in installments,[3] in the event of default, ERISA also allows for acceleration of the amount due.[4]

In this case, section 9.1(I) of the Trust Agreement states that the Joint Industry Board may declare an employer in "default," and accelerate the withdrawal liability if the Joint Industry Board has reason to believe that the employer will be unable to comply with a schedule of installment payments due to a substantial change in the employer's structure and operations. (*See* Compl., ECF No. 1, ¶ 19; Virginia Decl., ECF No. 16, ¶ 17; Trust Agreement, ECF No. 16-5.) Plaintiff's November 16, 2021 Notice and Demand demanded that Defendant Gaffney-Kroese pay the entire withdrawal liability amount by December 16, 2021. (Compl., ECF No. 1, ¶ 20; Virginia Decl., ECF No. 16, ¶ 18; Notice and Demand Letter, ECF No. 16-6.)

Given Defendants' failure to respond to the complaint, the Court accepts Plaintiff's factual allegations and draws all reasonable inferences in Plaintiff's favor. *See Finkel*, 577 F.3d at 84. As discussed *supra*, Plaintiff has alleged that "Gaffney-Kroese permanently ceased all business operations within the geographic jurisdiction of the Union, permanently ceased covered operations under the Pension Fund, and permanently ceased to have an obligation to contribute to the Pension Fund." (Compl., ECF No. 1, ¶ 17.) Plaintiff also followed the prescribed procedures for notification and acceleration under ERISA. *See* 29 U.S.C. § 1399(b) (regarding notification procedures

---

[3] *See* 29 U.S.C. § 1399(c)(2)–(3) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . . Each annual payment determined under paragraph (1)(C) shall be payable in 4 equal installments due quarterly, or at other intervals specified by plan rules.").

[4] A plan sponsor may "require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

upon an employer's complete or partial withdrawal); *id.* § 1399(c)(5) (permitting a plan sponsor to "require immediate payment" upon default).

The Court finds Plaintiff's allegations sufficient to establish that Defendant Gaffney-Kroese completely withdrew from the CBA, and that Plaintiff followed the procedures required to demand payment for the withdrawal. As set forth above, Plaintiff sent a Notice and Demand by letter dated November 16, 2021, notifying Gaffney-Kroese of its obligation to pay withdrawal liability of $538,982, on or before December 16, 2021. (Compl., ECF No. 1, ¶ 20.) Gaffney-Kroese did not pay Plaintiff by the December 16, 2021 deadline or at any point thereafter. (*Id.* ¶ 23.) Accordingly, the Court finds that Gaffney-Kroese has defaulted on its accelerated withdrawal liability payment obligations. *See* 29 U.S.C. § 1399(c)(5). As a result, Gaffney-Kroese is obligated to pay withdrawal liability of $538,982 to Plaintiff.[5] *See Finkel v. Athena Light & Power LLC*, No. 14-CV-3585 (DLI) (PK), 2016 WL 4742279, at *5 (E.D.N.Y. Sept. 11, 2016) (granting summary judgment in a case with the same Plaintiff, where the defendant employer failed to contest the union's accelerated withdrawal liability demand).

## B. Joint and Several Liability

As set forth above, under ERISA, employees of trades or businesses that are under "common control" are considered employees of a single employer, and the trades or businesses under common control are considered a single employer. *See* 29 U.S.C. § 1301(b)(1). Each entity under common control is jointly and severally liable for the

---

[5] Here, Plaintiff states that "[w]ithdrawal liability was calculated by the Pension Fund's actuary using the calculation methods set out in section 4211(c)(3) of ERISA, 29 U.S.C. § 1391(c)(3) and adopted by the Pension Fund in its Trust Agreement, in the amount of $538,982." (Pl.'s Mem. in Supp. of Mot. for Default J. ("Pl.'s Mem."), ECF No. 17, at 3; *see also* Compl., ECF No. 1, ¶¶ 16, 20; Virginia Decl., ECF No. 16, ¶¶ 32–35; Trust Agreement, ECF No. 16-5; and Actuary Report, ECF No. 16-7.) *See* 29 U.S.C. § 1391(c)(3).

others' withdrawal liability. *See id.*; *Frank Miceli Jr. Contracting, Inc.*, 2016 WL 1275041, at *3.

Plaintiff has established that the Affiliated Entities are "trades or businesses" under ERISA. Although ERISA does not define "trade or business," the Second Circuit has determined that "for an activity to be a 'trade or business' under [ERISA] section 1301(b)(1), a person or entity must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Enivel Properties, LLC*, 791 F.3d at 373 (citing *Comm'r v. Groetzinger*, 480 U.S. 23, 35 (1987)); *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, No. 05-CV-6819 (SAS), 2006 WL 1292780, at *2 (S.D.N.Y. May 11, 2006) ("[C]ourts have held that the 'appropriate starting point for this analysis' is the test enunciated by the Supreme Court in *Commissioner of Internal Revenue v. Groetzinger,* defining trade or business for purposes of section 162(a) of the Internal Revenue Code.") (quoting *NYSA-ILA Pension Tr. Fund v. Lykes Bros., Inc.*, No. 96-CV-5616 (DLC), 1997 WL 458777, at *5 (S.D.N.Y. Aug. 11, 1997)). Using the analysis in *Groetzinger*, for an activity to be considered a trade or business, "'the taxpayer must be involved in the activity with continuity and regularity and . . . the taxpayer's primary purpose for engaging in the activity must be for income or profit,'" as opposed to operating for "personal" reasons. *Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 373 (E.D.N.Y. 2013) (quoting *Groetzinger*, 480 U.S. at 35); *UFCW Loc. One Pension Fund v. Enivel Properties, LLC*, No. 11-CV-1144 (GTS) (ATB), 2014 WL 2711660, at *5 (N.D.N.Y. June 16, 2014), *aff'd*, 791 F.3d 369 (2d Cir. 2015) ("In making the primary-purpose-of-income-or-profit determination, courts consider the facts and circumstances that distinguish between operating for income or profit and operating for 'personal' reasons.").

Plaintiff has identified several corporate entities that it alleges were "trades or businesses" under common control with Defendant Gaffney-Kroese. (Compl., ECF No. 1, ¶ 27.) Plaintiff further alleges that the Affiliated Entities were owned by Christopher C. Kroese and John S. Kroese, III, who "together, owned at least 80% of the issued stocks for each Defendant." (*Id.* ¶ 30.) Given that the Defendants are all alleged to be corporations or LLCs, and no indication that they were operating for merely "personal" reasons, the complaint plausibly alleges that the Defendants were all trades or businesses under ERISA. *See* 29 U.S.C. § 1301(b)(1).

Plaintiff also adequately alleges that Defendant Gaffney-Kroese and the Affiliated Entities were under common control. (*See* Compl., ECF No. 1, ¶¶ 27–29.) As set forth above, the complaint alleges that Defendants share common owners and a common ownership structure. (*Id.*) Accepting Plaintiff's factual allegations as true, the complaint alleges facts from which to reasonably infer that Defendants were a "brother-sister" group of businesses under common control, in that they were controlled by the same two people who owned at least 80% of the shares, and at least 50% of the shareholder's ownership interests in each corporation is identical. *See Ferrara*, 29 F. Supp. 3d at 286. Accordingly, Plaintiff has established that the Affiliated Entities are under common control with the obligated entity, Defendant Gaffney-Kroese, and that all Defendants are jointly and severally liable for the withdrawal liability incurred by Gaffney-Kroese.

### C. Damages Under ERISA

Here, Plaintiff seeks the withdrawal liability payment, interest, liquidated damages, and attorney's fees and costs. As discussed above, Plaintiff has properly pled a claim for withdrawal liability in the amount of $538,982. (Compl., ECF No. 1, ¶ 20;

Actuary Report, ECF No. 16-7.) The Court further recommends an award of liquidated damages, pre- and post-judgment interest, and attorney's fees and costs.

As a threshold matter, the Court observes that ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution."[6] 29 U.S.C. § 1451(b).

1. *Liquidated Damages*

In addition to ERISA permitting liquidated damages, *see* 29 U.S.C. § 1132(g)(2)(C)(ii), Plaintiff's Trust Agreement in this case provides, in pertinent part, as follows:

> [i]n any suit by the Committee, or the Joint Industry Board on its behalf, to collect withdrawal liability . . . if judgment is awarded in favor of the Trust, the Employer shall pay to the Trust, in addition to the unpaid liability and interest thereof as determined above, liquidated damages equal to the greater of —

---

[6] Under ERISA, damages that may be awarded for failure to pay required ERISA contributions include the following:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of —

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

(i) the amount of interest charged on the unpaid balance, or

(ii) twenty (20%) percent ([or a] higher percentage, if permitted by Federal or State law) of the unpaid amount awarded.

(Trust Agreement, ECF No. 16-5, Art. IX, § 9.1(E)(3).) The amount of interest due on the unpaid balance under the Trust Agreement is 1.5% per month, which results in a daily rate of $265.80.[7] (*See* Interest and LD Calculations, ECF No. 16-8.) Here, 20% of the principal withdrawal liability ($538,982 x 0.2) is $107,796.40. (*Id.*) Here, the accumulated interest will be greater than 20% of the withdrawal liability.[8] For example, using the amount of interest provided for in the Trust Agreement would result in a liquidated damages award of $115,357.20 as of February 22, 2023 (the date of this Report and Recommendation). (434 days between December 16, 2021 and February 22, 2023, multiplied by the daily interest rate of $265.80 = $115,357.20.) Since the Trust Agreement provides for liquidated damages in the greater amount of 20% of the unpaid award or the amount of interest, the Court recommends awarding Plaintiff liquidated damages in the amount of interest charged on the unpaid balance, calculated at the rate of $265.80 per day from December 16, 2021 through the date of judgment.

---

[7] Plaintiff's calculations are as follows. As set forth *supra*, Plaintiff demanded withdrawal liability in the amount of $538,982. (Notice and Demand Letter, ECF No. 16-6; Actuary Report, ECF No. 16-7.) At a monthly interest rate of 1.5%, interest per month equals $8,084.73. ($538,982 x 0.015 = $8,084.73.) In turn, interest per year is calculated as $97,016.76 ($8,084.73 x 12 = $97,016.76), and interest per day is thus $265.80. ($97,016.76 / 365 = $265.80.) Liquidated damages, calculated at a rate of 20% of the withdrawal liability, would be $107,796.40. ($538,982 x 0.20 = $107,796.40.) (*See* Interest and LD Calculations, ECF No. 16-8.) Prejudgment interest and liquidated damages should be calculated using the number of days since December 16, 2021 through the date of judgment, multiplied by the daily rate of $265.80.

[8] *See Finkel v. Captre Elec. Supply Co. Inc.*, No. 14-CV-3584 (RJD) (JO), 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015), *report and recommendation adopted*, 2015 WL 5330388 (E.D.N.Y. Sept. 11, 2015) ("ERISA provides for such an award of interest on outstanding withdrawal liability from the 'due date of the first payment which was not timely made.'") (quoting 29 U.S.C. § 1399(c)(5)).

2. *Prejudgment Interest*

As noted above, ERISA mandates that a damages award includes interest on unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B).[9] Furthermore, plans are permitted to "adopt rules relating to overdue and defaulted withdrawal liability, provided that those rules are consistent with ERISA. These rules may include . . . rules for determining the rate of interest to be charged on overdue, defaulted and overpaid withdrawal liability (provided that the rate reflects prevailing market rates for comparable obligations)." 29 C.F.R. § 4219.33.[10] Here, Plaintiff's Trust Agreement provides that "[i]nterest shall be charged on any amount in default from the date the payment was due to the date it is paid at a rate equal to one and one-half percent (1½%) for each month or part thereof for which the amount is delinquent." (Trust Agreement, ECF No. 16-5, Art. IX, § 9.1(E)(2); Virginia Decl., ECF No. 16, ¶ 39–41; Compl., ECF No. 1, ¶¶ 25, 34.)

---

[9] The Court further notes that in the event of a default under ERISA, a complainant may also seek "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made," with interest rates "charged at rates based on prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1399(c)(5), (6); *see also* 29 C.F.R. § 4219.33 ("Plans may adopt rules relating to overdue and defaulted withdrawal liability . . . . These rules may include, but are not limited to, rules for determining the rate of interest to be charged on overdue, defaulted and overpaid withdrawal liability (provided that the rate reflects prevailing market rates for comparable obligations . . . .")).

[10] ERISA does not provide for a definition of "prevailing market rates for comparable obligations," but "[u]nder 29 C.F.R. § 4219.32(b), it is appropriate for multiemployer plans to use interest rates set by the Pension Benefit Guaranty Corporation (PBGC) unless rules adopted by the plan provide otherwise." *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308 (RPK) (SJB), 2022 WL 18107257, at *10 (E.D.N.Y. Dec. 6, 2022). Here, the Pension Fund assigned a monthly interest rate of 1.5% for delinquent withdrawal liability payments. (Virginia Decl., ECF No. 16, ¶ 40; Trust Agreement, ECF No. 16-5.) The Court concludes that the Pension Fund's rate (of 1.5%) is permissible, given that it does not exceed the interest rates set by the PBGC for late or defaulted withdrawal liability. *See Late or Defaulted Withdrawal Liability*, Pension Benefit Guaranty Corporation, https://www.pbgc.gov/prac/interest/oodwl (last visited Feb. 15, 2023) (setting interest rates from December 16, 2021 to the present day ranging from 3.25% to 7.5%).

The date of the missed payment, December 16, 2021, is the date from which to calculate accrued interest on withdrawal liability.[11] (*See* Compl., ECF No. 1, ¶¶ 20, 23–24.) *See* 29 C.F.R. § 4219.32(a), 29 U.S.C. § 1399(c)(3). Plaintiff calculates that the *per diem* interest payment is $265.80. (Compl., ECF No. 1, ¶ 43; Interest and LD Calculations, ECF No. 16-8.) *See* 29 C.F.R. § 4219.32(c) (providing for calculation of interest at a daily rate). The Court finds no error in Plaintiff's calculations, as discussed *supra* note 7. Accordingly, the Court finds that Plaintiff is entitled to prejudgment interest at a *per diem* interest rate of $265.80 from December 16, 2021 to the date of judgment.

3.  *Post-Judgment Interest*

In this Circuit, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)); *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery*, Inc., No. 21-CV-308 (RPK) (SJB), 2022 WL 18107257, at *15 (E.D.N.Y. Dec. 6, 2022). "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'" *Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)). The Court finds that Plaintiff shall be awarded post-judgment interest on the total judgment, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

4.  *Attorney's Fees and Costs*

Although ERISA mandates the recovery of attorney's fees in a successful action to recover damages, courts have broad discretion in determining what constitutes a

---

[11] *See supra* note 8.

reasonable attorney's fee.[12] *See* 29 U.S.C. § 1132(g)(2)(D); 29 U.S.C. § 1451(e); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). In this Circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of the attorney. *See Arbor Hill*, 522 F.3d at 186 n.3. Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009). In this district, paralegal fees are compensable in an award of attorney's fees. *See Div. 1181*, 270 F. Supp. 3d at 619.

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 186; *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill*, 522 F.3d at 183). With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *see also Finkel*, 970 F. Supp. 2d at 127.

a. <u>Reasonable Hourly Rates</u>

In this case, Plaintiff seeks $11,892 in attorney's fees for 44.9 hours, billed at varying rates from $135 to $450 per hour, for paralegal work through work of a senior

---

[12] In this case, Plaintiff's Trust Agreement also requires the payment of attorney's fees as follows: "The Employer shall also pay attorney's fees and all costs incurred in the action, as awarded by the court." (Trust Agreement, ECF No. 16-5, Art. IX, § 9.1(E).)

partner. (*See* Mem. of Law, ECF No. 17, at 16–18; History Bill for Court, ECF No. 16-9, at 7.) Reasonable hourly rates in this district range "from $300 to $450 per hour for partners . . . and $70 to $100 per hour for paralegals." *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020), *report and recommendation adopted*, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020); *see also Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312 (ARR) (PK), 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), *report and recommendation adopted*, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020); *Temperini Mech. Inc.*, 2018 WL 8452493, at *7; *but see Gesualdi v. Town Holding Corp.*, No. 18-CV-5744 (ARR) (RER), 2019 WL 5693803, at *7 (E.D.N.Y. Aug. 15, 2019) (citing two cases finding that $110 is a reasonable hourly rate for paralegals).

Here, attorney Charles R. Virginia is a 1989 graduate of Fordham University School of Law and founding partner of his law firm Virginia & Ambinder, LLP ("V&A"); he has served as lead counsel in the prosecution of ERISA collection actions for more than 25 years, and V&A billed his time at a rate of $450 per hour. (Virginia Decl., ECF No. 16, ¶ 48.) *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, No. 22-CV-5729 (GHW), 2022 WL 14119808, at *6 (S.D.N.Y. Oct. 22, 2022) (finding an hourly rate of $350 reasonable for Mr. Virginia); *Finkel v. Mech. Elec. Corp.*, No. 21-CV-5995 (WFK) (RML), 2022 WL 17740190 (E.D.N.Y. Dec. 16, 2022) (awarding Mr. Virginia an hourly rate of $350). Notwithstanding recent, slightly lower awards, in light of Mr. Virginia's extensive experience and seniority, the Court finds $375 to be a reasonable hourly rate for his work. John Harras is a 2015 graduate of St. John's University School of Law and a partner at V&A; he routinely acts

as lead counsel in ERISA collection matters, and V&A billed his time at a rate of $385 per hour. (Virginia Decl., ECF No. 16, ¶ 49.) *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Goal Enters., Inc.*, No. 20-CV-1958 (KAM) (RER), 2022 WL 17820088, at *9 (E.D.N.Y. July 6, 2022), *report and recommendation adopted* (E.D.N.Y. Aug. 5, 2022) (awarding Mr. Harras attorney's fees at the rate of $300 per hour). Maura Moosnick is a 2021 graduate of Fordham University School of Law and an associate at V&A; she has two years of work experience as a paralegal in V&A's ERISA collections practice, and V&A billed her time at a rate of $290 per hour. (Virginia Decl., ECF No. 16, ¶ 50.) *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Blue Moon Health Mgmt. LLC*, No. 22-CV-1807 (KPF), 2022 WL 16578119, at *7 (S.D.N.Y. Oct. 31, 2022) (awarding Ms. Moosnick attorney's fees at a rate of $225 per hour and listing other recent cases that similarly granted V&A associates who graduated from law school in 2016 a rate of $225 per hour); *Architectural Metal Concept LLC*, 2022 WL 14119808, at *6 (awarding Ms. Moosnick a rate of $225 per hour). Adrianna Grancio is a 2016 graduate of St. John's University School of Law and an associate at V&A; she has regularly represented multiemployer benefit plans in ERISA litigation since joining the firm in 2019, and V&A billed her time at a rate of $290 per hour. (Virginia Decl., ECF No. 16, ¶ 51.) *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Three Guys Floor Covering Workroom Inc.*, No. 21-CV-910 (KPF), 2021 WL 4873152, at *7 (S.D.N.Y. Oct. 18, 2021) (awarding Ms. Grancio an hourly rate of $250, but noting that "[c]ourts in the Second Circuit have consistently awarded Ms. Grancio fees at an hourly rate of between $225 and $250"). Finally, V&A billed paralegals' time at a rate of $135 per hour. (Virginia Decl., ECF No. 16, ¶ 52.)

b. _Reasonable Expenditures of Time_

Plaintiff seeks reimbursement for 44.9 hours of time, including 34.8 hours of attorney work and 10.1 hours of paralegal work, supported by detailed billing records. (History Bill for the Court, ECF No. 16-9.) The number of hours, however, slightly "exceeds the typical expenditure of time claimed in ERISA cases resolved at the default judgment posture." _Gesualdi_, 2019 WL 5693803, at *8 (citing a case that gave a range of 10.7 to 22.8 hours for attorney work, and a case that found 32.7 hours excessive); _Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC_, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *11 (E.D.N.Y. Sept. 15, 2022), _report and recommendation adopted_, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), _supplemented_, 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022) (finding 22.9 hours reasonable for an ERISA default motion, and collecting cases awarding fees for 14 to 28 hours in the ERISA default context).

In particular, attorney Maura Moosnick alone logged 31.2 hours in connection with this matter, exceeding the typical reasonable time period (of 14 to 28 hours) for an ERISA default case. (History Bill for the Court, ECF No. 16-9.) The Court notes that Ms. Moosnick logged 24.5 hours related to the drafting of the motion for default judgment and its accompanying memorandum of law, declaration, and exhibits. (_Id._) The V&A paralegals also spent considerable time on the case (10.1 hours), largely devoted to efforts to effect service on the six Defendants.

Upon a careful review of the time records and considering all the factors, including previous awards in similar cases, the legal team's subject matter expertise and the relatively straightforward claims, but recognizing the complexity of researching multiple corporate entities in more than one state, the Court respectfully recommends adjusting the hourly rates for each member of Plaintiff's legal team. The Court further

recommends adjusting the hours slightly by reducing Ms. Moosnick's time spent to 28 hours.

Overall, the Court recommends the following hourly rates and corresponding fee award:

| Name | Proposed Hourly Rate | Awarded Hourly Rate | Hours Worked | Hours Awarded | Total Award |
|---|---|---|---|---|---|
| Charles R. Virginia | $450 | $375 | 1.6 | 1.6 | $600 |
| John Harras | $385 | $300 | 1.9 | 1.9 | $570 |
| Maura Moosnick | $290 | $225 | 31.2 | 28 | $6,300 |
| Adrianna Grancio | $290 | $250 | 0.1 | 0.1 | $25 |
| V&A Paralegals | $135 | $110 | 10.1 | 10.1 | $1,111 |
| | | | Total: 44.9 Hours | Total: 41.7 Hours | Total: $8,606 |

c. _Reasonable Costs_

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *N. Adhesives, Inc.*, 2020 WL 6370060, at *5 (citing *Div. 1181*, 270 F. Supp. at 628). Plaintiff requests $1,547.69 in costs related to this action, comprising a $402.00 filing fee, $87.50 in ordering New Jersey business records, $8.19 in postage fees, and an additional $1,050 for several instances of service of process. (*See* History Bill for the Court, ECF No. 16-9.) The Court finds these costs to be documented and reasonable and, consequently, recommends awarding $1,547.69 in costs.

## CONCLUSION

For the reasons outlined above, the Court recommends entering a default judgment and awarding Plaintiff damages, for which all Defendants shall be held

jointly and severally liable, as follows: (1) withdrawal liability in the amount of $538,982; (2) liquidated damages calculated at a *per diem* rate of $265.80, from December 16, 2021 to the date of judgment; (3) pre-judgment interest at the *per diem* rate of $265.80, from December 16, 2021 through the date of judgment; (4) post-judgment interest at the statutory rate; and (5) an award of $8,606 for attorney's fees, and costs in the amount of $1,547.69.

In addition, Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants by February 24, 2023, and to file proof of service with the Court.

\* \* \* \* \*

This Report and Recommendation will be filed electronically and a copy will be sent by mail to Defendants. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:   Brooklyn, New York
             February 22, 2023

_____
*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE